**DELAWARE COUNTY PRISON EMPLOYEES INDEPENDENT UNION; Robert Pizzi, President, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer; and Michael Pelleritti, Secretary, Delaware County Prison Employees Independent Union, in His Official Capacity and as a Taxpayer, Appellants,**

**v.**

**DELAWARE COUNTY, Pennsylvania; The Delaware County Council; Ward T. Williams, Paul G. Mattus, Thomas H. Killion, Wallace H. Nunn, and John J. McFadden, in Their Capacity as Members of the Delaware County Council; The Delaware County Board of Prison Inspectors; and Charles Sexton, William Kelly, Elizabeth Signor, Ward Williams, and John McKenna, in Their Capacity as Members of the Delaware County Board of Prison Inspectors and Wackenhut Corrections Corporation.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided Feb. 23, 1996.

Ralph J. Teti, for Appellants, Delaware County Prison Employees Independent Union, Robert Pizzi and Michael Pelleritti.

Patrick Matusky, for Appellees, Delaware County Board of Prison Inspectors, Charles P. Sexton, William Kelly, Elizabeth Signor, Ward T. Williams and John McKenna.

Richard H. Glanton, for Appellee, Wackenhut Corrections Department.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

McGINLEY, Judge.

The Delaware County Prison Employee's Independent Union, et. al. (Appellants) appeal from an order of the Court of Common Pleas of Delaware County (common pleas court) which denied their request for a preliminary injunction.

On July 31, 1995, Delaware County Council (Council) issued a notice to the president of Appellants' union stating that all of the cor-

rectional officers employed at the Delaware County Prison would be laid off effective midnight, September 30, 1995. Pursuant to an agreement between Wackenhut Corrections Corporation (Wackenhut) and the Delaware County Board of Prison Inspectors (Board), Wackenhut's employees were contracted to perform the duties of the corrections officers.

Appellants filed charges of unfair labor practices against the County as well as a grievance pursuant to the labor contract. These charges are pending. Additionally, Appellants filed a complaint in equity and a petition for preliminary injunction with the common pleas court. The petition for preliminary injunction (the subject of this appeal) requests that the county be enjoined from:

> contracting out the operation and management of the Delaware County Prison and laying off the correctional officers employed there until (1) the Court conducts a full trial, on the merits of Plaintiffs' First, Second, Third, Fourth, Fifth and Sixth Causes of Action and (2) the Plaintiffs have exhausted their administrative remedies as set forth in their Seventh and Eighth Causes of Action.

In an opinion and order dated September 27, 1995, the common pleas court denied Appellants' petition. Appellants appeal.[1]

Our Pennsylvania Supreme Court has established the following prerequisites for a preliminary injunction:

> [F]irst, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct. (citation omitted). Even more essential, however, is the determination that the activity sought to be restrained is actionable, and that the

injunction issued is reasonably suited to abate such activity. And unless the plaintiff's right is clear and the wrong is manifest, a preliminary injunction will not generally be awarded: *Keystone Guild, Inc. v. Pappas*, 399 Pa. 46, 159 A.2d 681 (1960), and *Herman v. Dixon*, 393 Pa. 33, 141 A.2d 576 (1958).

*Philadelphia v. District Council 33, American Federation of State, County & Municipal Employees*, 528 Pa. 355, 598 A.2d 256, 259 (1991) (*citing Singzon v. Commonwealth Department of Public Welfare*, 496 Pa. 8, 436 A.2d 125 (1981)). The common pleas court determined that Appellants had failed to prove two of the aforementioned criteria: first, that the alleged wrong is manifest and that Appellants' rights to relief are clear, and second, that the greater injury will occur from refusing the injunction than from granting it.

Initially, Appellants contend that the common pleas court erred when it ruled that Appellants did not have a clear right to relief in the form of a preliminary injunction. Specifically, Appellants argue that Appellees' efforts to contract out the operation and management of the prison violated the contracts clause of the Pennsylvania Constitution.[2]

The common pleas court concluded that the layoffs did not violate the collective bargaining agreement, ergo, there was no violation of the contracts clause. The common pleas court relied on Article 2 of the collective bargaining agreement, which states in part:

> The Employer reserves the right to manage and operate its establishment in such a manner as it sees fit, including but not limited to:
>
> a. Right to lay-off or discharge employees to the extent not modified by this Agreement.
>
> . . . .
>
> c. To subcontract work and services and delete and discontinue departments

---

1. Our scope of review of a lower court's decision denying a preliminary injunction is limited to determining whether the lower court's decision is supported by any reasonable grounds. *Adler v. Township of Bristol*, 83 Pa.Cmwlth. 72, 475 A.2d 1361 (1984).

2. The contracts clause, Article I, § 17 of the Pennsylvania Constitution, states "No ... law impairing the obligation of contracts shall be passed."

and personnel within County Government.

Agreement between Delaware County Prison Board and Delaware County Prison Employees Independent Union Correctional Officers (Agreement), effective April 1, 1990, at 2–3; Reproduced Record (R.R.) at 698a–699a. Appellants argue that the entire contract must be examined instead of a solitary clause. Appellants also believe the no-lock-out provision, as well as the fact that the agreement lasts until March 31, 1996, are relevant and persuasive on review.

We note that when interpreting a contract, the entire instrument must be reviewed, giving effect to all its provisions. *State College Manor, Ltd. v. Department of Public Welfare*, 133 Pa.Cmwlth. 343, 576 A.2d 407, *appeal dismissed*, 525 Pa. 263, 579 A.2d 1294 (1990). Further, the contract must be construed according to the plain meaning of the contract's language. *Id.*

Our Pennsylvania Supreme Court has noted that any law which enlarges, abridges, or in any manner changes the intention of parties as evidenced by their contract, imposing conditions not expressed therein or dispensing with performance of those which are a part of it, "impairs obligation of contract", regardless of whether the law affects the validity, construction, duration, or enforcement of the contract. *Beaver County Building and Loan Association v. Winowich*, 323 Pa. 483, 187 A. 481 (1936). Further, this court has held that any law which changes the original intent of parties to a contract by imposing conditions not expressed in the original contract impairs the contractual obligation. *Helicon Corp. v. Borough of Brownsville*, 68 Pa.Cmwlth. 375, 449 A.2d 118 (1982).

In interpreting the Contracts Clause of our United States Constitution, Art. I, § 10, our United States Supreme Court stated that "with like uniformity [it] has regarded [the Contracts Clause] as reaching every form in which the legislative power of a State is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the State exercising delegated legislative authority." *Ross v. Oregon*, 227 U.S. 150 at 162–163, 33 S.Ct. 220 at 223, 57 L.Ed. 458 (1913).

On April 25, 1995, Council passed a resolution which authorized "the preparation of a request for qualification from private industry for the purpose of subcontracting certain management functions of expanded prison facilities in the Delaware County Prison." Resolution of the Delaware County Council, April 25, 1995, at 1; R.R. at 824a. The August 31, 1995 resolution states in pertinent part:

> NOW, THEREFORE, BE IT RESOLVED that the Delaware County Council approves in its entirety the resolution of the Prison Board announcing its present intention to contract out to an outside firm certain services for the Delaware County Prison, including, without limitation the supervision and management of the clerical, administrative and security services which shall be effectuated no later than October 1, 1995.

> BE IT FURTHER RESOLVED that the Council of Delaware County authorizes its officials and officers to take all actions necessary and appropriate to carry out the purposes of the Prison Board Resolution.

Resolution of the Delaware County Council, August 1, 1995, at 1; R.R. at 826a. This legislative action resulted in a contract entered into between the Board and Wackenhut for performance of the same duties contemplated in the existing agreement between Appellants, the Board and the County. Appellants assert that the resolutions passed by the Council on April 25, 1995, and August 31, 1995, are legislative actions of the type contemplated by the Supreme Court in *Ross*. We agree.

Regardless of whether the terminations are characterized as layoffs or a lock-out the collective bargaining agreement entered into by Appellants with the Board and the County, clearly contemplated that the contract was to exist until March 31, 1996. Article 28 of the Agreement, titled "Duration", states:

> This Agreement shall take effect on the first day of April 1990, and shall remain in full force and effect through the 31st day

of March, 1993, and shall thereafter automatically renew itself for a successive term of one (1) year unless either party hereto shall notify the other party more than one-hundred eighty (180) days prior to the County budget submission date of their desire to terminate this Agreement.

Agreement, effective April 1, 1990, at 32–33; R.R. at 728a–729a. The Board's agreement with Wackenhut effectively terminated the collective bargaining agreement prematurely. We find that this action on the part of the Board, as approved by the legislative action of the Council dated August 1, 1995, amounts to an impairment of contract and, accordingly, violates the contracts clause of the Pennsylvania Constitution. We are therefore constrained to conclude that the common pleas court erred when it found a contrary result.

■■■ Next, Appellants contend that the common pleas court erred when it concluded that the greater injury would occur from a granting of the injunction. In its discussion of this issue, the common pleas court examined the potential harms which would befall the individual union members, the Union, the taxpayers, and Wackenhut as a result of the grant or denial of the injunction. The common pleas court determined that loss of medical benefits is the only legally cognizable harm which would befall the individual union members were the injunction to be denied, citing *International Union, United Auto. Workers v. Exide Corp.*, 688 F.Supp. 174, 186–187 (E.D.Pa.), *aff'd* 857 F.2d 1464 (3d Cir.1988) (a reduction in medical benefits resulting from a change in carriers constitutes an irreparable harm which would warrant granting of a preliminary injunction). While conceding that the loss of medical benefits would indeed be harmful to those union members not re-hired by Wackenhut, the common pleas court noted that most of the union members were to be re-hired by Wackenhut and would receive "essentially the same or lower deductibles than the current plan." Common Pleas Court Opinion, September 27, 1995, at 8. Our review of the record, however, reveals no support for such a statement. To the contrary, Michael Joseph Pelleritti, a union member who worked as a corrections officer in the intake unit of the prison, testified that as a Wackenhut employee, medical benefits would cost him $225.00 more per month than the cost of medical benefits for a union member. Notes of Testimony (N.T.), September 18, 1995, at 13; R.R. at 418a.

The common pleas court also determined that the Union would not be irreparably harmed by a denial of the injunction. In making this conclusion, the common pleas court distinguished *District Council 33, supra*. In *District Council 33*, the City of Philadelphia attempted to unilaterally modify the pension benefits of AFSCME members, through the passage of an ordinance, which did not conform to the pension language in the existing collective bargaining agreement. Our Pennsylvania Supreme Court determined that the denial of a preliminary injunction against the city constituted an immediate and irreparable harm to the union. In distinguishing *District Council 33*, the common pleas court concluded that:

> If AFSCME is ineffective as a union, it will lose union members. Therefore, if one council of AFSCME is not properly represented, AFSCME members from other councils may terminate their membership or the members of the subject council may terminate their membership. In the case at bar, we are dealing with an independent Union which is different from a union such as AFSCME. An independent Union's inability to obtain an injunction will not have the same potential loss of union members as would a union such as AFSCME.

Trial Court Opinion, September 27, 1995, at 10–11. We can find no support for such an interpretation in *District Council 33*. Nowhere did our Supreme Court attempt to limit its holding to unions such as AFSCME, or make an exception for independent unions such as the one involved in the present controversy. We believe the reasoning in *District Council 33* applies equally to independent unions such as Appellants' and accordingly conclude that irreparable harm will result from the denial of a preliminary injunction.

In examining harm to the taxpayers, the common pleas court conceded that the taxpayers would suffer irreparable harm if the

contract between the Board and Wackenhut were found to be illegal. Because the contract and the events leading to its approval constituted an unconstitutional impairment of contract, we conclude that such irreparable harm would result to taxpayers from a denial of the preliminary injunction.

Finally, the common pleas court determined that a grant of the preliminary injunction would harm Wackenhut, in that "Wackenhut will have suffered financial losses including the loss of profits and the expenses and resources which it has devoted to the preparing of the staffing of the prison guard positions including, but not limited to, the interviewing process." Trial Court Opinion at 11. An examination of the agreement between the Board and Wackenhut, reveals that Wackenhut recognized the possibility of a legal challenge to the agreement. Specifically, Article 7, paragraph 7.7 of the Wackenhut agreement states in part that:

> In the event that any Court Order is issued enjoining performance of this agreement in whole or in part or enjoining use of all or a material portion of the Prison for the incarceration of Inmates or legislation is enacted which invalidates this Agreement in whole or in part, the Board may, at its option and without penalty, terminate this Agreement, effective as of the date that such injunction or legislation becomes effective. In the event of termination in whole, Provider shall be entitled to compensation for each day up to the termination date. . . .

Professional Services Contract for Daily Functional Services Between Wackenhut Corrections Corporation and Delaware County Board of Prison Inspectors, effective August 31, 1995, at 34–35; R.R. at 885a–886a. Accordingly, we find that any harm suffered by Wackenhut as a result of a grant of the preliminary injunction is certainly mitigated by Wackenhut's knowing acceptance of the risks as evidenced by the Agreement.

We can only conclude that the greater harms would clearly result if the preliminary injunction is denied, and as a result we find that the common pleas court erred when it concluded otherwise.

Accordingly, we reverse the decision of the common pleas court.[3]

### ORDER

AND NOW, to wit, this 23rd day of February, 1996, the order of the Court of Common Pleas of Delaware County at No. 95–10263, and dated September 27, 1995, is reversed. This matter is remanded to the common pleas court with instructions to grant preliminary injunction in favor of Delaware County Prison Employees Independent Union, et al. and for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

---

3. Appellants also raise the following issues: 1) that the common pleas court erred when it found that this action was not violative of the Anti-Delegation Clause of the Pennsylvania Constitution, the governing provision statutes, and the Delaware County Home Rule Charter; 2) that the common pleas court erred in ruling that this action violates the principle that a governmental body has no authority to bind its successors; and 3) that the common pleas court erred when it concluded that this action does not violate deferral principles under Pennsylvania caselaw. Due to our disposition of Appellants' first two arguments, we need not examine the remaining arguments raised by Appellants.